IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN DONALDSON, | ) | CASE NO. 3:16 CV 755 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MICHELE MILLER, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Kevin Donaldson for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Donaldson was convicted by a Wood County Court of Common Pleas, jury in 2013 of trafficking in persons[3] and is serving twelve years. He is currently incarcerated at the Belmont Correctional Institution in St. Clairsville, Ohio.[4]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Solomon Oliver, Jr. by non-document order dated May 12, 2016.

[2] ECF # 1.

[3] *Id.*

[4] http://www.drc.state.oh.us/OffenderSearch

In his petition, Donaldson raises one ground for habeas relief.[5] The State has filed a return of the writ arguing that the petition should be dismissed because it is procedurally defaulted, non-cognizable, and without merit.[6] Donaldson has filed a traverse.[7]

For the reasons that follow, I will recommend Donaldson's petition be dismissed.

## Facts

### A.    Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[8]

At trial, Detective Peter Swartz of the Toledo Police Department, testified that he is assigned to the Northwest Ohio Violent Crimes Against Children Task Force.[9]  As part of his duties, he participates in undercover investigations of prostitution.[10]  During such an investigation, he contacted two young women who had advertised serviced under the "escort" section of the website known as Backpage.com.[11]

---

[5] ECF # 1.

[6] ECF # 11.

[7] ECF # 14.

[8]  Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[9] *State v. Donaldson*, No. WD-13-08, 2014 WL 4160799, at *1 (Ohio Ct. App. Aug. 22, 2014).

[10] *Id.*

[11] *Id.*

Detective Swartz testified that he obtained four rooms at a local hotel.[12]  One was for him and the others were for use in connection with the investigation.[13]  Swartz called a woman named "Asia" from the advertisement and asked her how much it would be for her and her friend "Hazel" to come to his hotel room for sex.[14]  Asia told him that it would be $300 for the both of them.[15]  Swartz agreed to the price, and Asia told him they were on their way.[16]  When they arrived at the hotel, Asia told Swartz to put $300 on the bed.[17]  The women began to take their clothes off when Swartz signaled his fellow officers to enter the room and detain them.[18]

Detective Christopher Klewer testified that he also participated in the undercover investigation.  Specifically, he was stationed outside of the hotel in an unmarked vehicle.[19] The officers inside the hotel advised him to watch for the two young women.[20] Shortly thereafter, he observed the two young women walk across the parking lot and enter the

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

hotel.[21]   He testified that from his experience in working many undercover prostitution stings, the prostitutes are usually dropped off by someone else.[22] He then turned his attention to the area around him hoping to find a suspicious car.[23] In a nearby parking lot, he noticed a Volkswagen with out of state plates.[24]   The car caught his attention because it was the only occupied car in the lot and it had a direct view of the hotel.[25]   He watched the car for approximately ten minutes before he was notified that the women had been detained.[26]  At that point, the Volkswagen exited the parking lot and Klewer began to follow it.[27] When the driver failed to signal a left turn, Klewer notified a nearby marked sheriff's car of the violation.[28]  The marked car pulled the Volkswagen over and Klewer followed behind.[29]

Klewer initially approached the passenger side of the vehicle where he smelled the distinct odor of marijuana, and the passenger was covered in green, vegetative material.[30]

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

He also had a bag of marijuana in his pocket.[31]  Klewer read Donaldson his Miranda rights and then asked him about the women.[32]  Donaldson stated that he and the women were from New York and that the women had paid him $50 to bring them to the hotel.[33]  Donaldson stated that he did not know why the women wanted to go to the hotel.[34]

Donaldson was indicted on two counts of trafficking in persons and two counts of promoting prostitution.[35] A jury found him guilty on all counts.[36] He was sentenced to twelve years in prison.[37]

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at *2.

[37] *Id.*

## B.    Direct Appeal

### 1.    *Ohio Court of Appeals*

Donaldson, through counsel, filed a timely[38] notice of appeal[39] with the Ohio Court of Appeals. In his brief, Donaldson filed four assignments of error:

1.    The trial court erred when it admitted impermissible expert testimony.

2.    The trial court erred when it admitted hearsay and other improper evidence over objection.

3.    The State committed prosecutorial misconduct by refusing to grant immunity to its own witnesses for the purpose of preventing the jury from hearing exculpatory evidence when denying appellant his right to confront witnesses.

4.    The trial court abused its discretion when it allowed the State to present extrinsic evidence of a prior inconsistent statement in violation of Evid. R. 613.[40]

The state filed a brief in response.[41] The Ohio appeals court overruled all four assignments of error and affirmed the decision of the trial court.[42]

---

[38]    Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007) (unreported case).Donaldson's conviction and sentence were journalized on April 30, 2013 (ECF # 11, Attachment 2 at 23) and the notice of appeal was filed on May 22, 2013. *Id.* at 27.

[39]    *Id.*

[40]    *Id*. at 34.

[41]    *Id*. at 59.

[42]    *Donaldson*, 2014 WL 4160799.

## 2.     *The Supreme Court of Ohio*

Donaldson, through counsel, thereupon filed a timely[43] notice of appeal with the Ohio Supreme Court.[44]  In his brief in support of jurisdiction, he raised two propositions of law:

1.     A victim in a case cannot also be designated as a co-conspirator, for purposes of admitting their statements against the defendant, pursuant to Evid. R. 801(D)(2)(e).

2.     A statement of a co-conspirator, which does not constitute hearsay, cannot be admitted unless the proponent of the statement provides independent proof of the conspiracy prior to introduction of the statement.

There are no recognized exceptions, including harmless error, to the requirement that proof of th conspiracy must be made before the statement can be admitted at trial.[45]

The State opposed jurisdiction.[46]  On March 25, 2015, The Supreme Court of Ohio declined jurisdiction of the appeal under S.Ct.Prac.R. 7.08(B)(4).[47]  The record does not indicated that Donaldson appealed to the United States Supreme Court.

---

[43]  *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.); *See*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day limit) (unreported case).  On August 22, 2014 the Ohio Court of Appeals affirmed the decision of the trial court.  Donaldson filed his appeal with the Supreme Court of Ohio on October 2, 2014, thus it is timely.

[44]  ECF # 11, Attachment 2  at 99.

[45]  *Id*. at 103.

[46]  *Id*. at 134.

[47]  *State v. Donaldson*, 142 Ohio St.3d 1409, 27 N.E.3d 359 (2015).

## C.  Petition for writ of habeas corpus

On March 24, 2016, Donaldson, through counsel, timely filed[48] a federal petition for habeas relief.[49] As noted above, he raises one ground for relief:

> **GROUND ONE:**  Petitioner was denied his constitutional right to confront his accusers at trial.
>
> Supporting Facts:  It was charged that Donaldson compelled two victims, Pirela and Negron to engage in sexual activity for hire pursuant to O.R.C. 2905.32. His conviction was contingent upon the state proving he compelled (by threat or force) Negron and Pirela to engage in the sexual activity. Prior to the trial, the state indicated it would prove the element of compulsion by introducing text messages between Donaldson and Pirela. Defense counsel objected. Without hearing and evidence of conspiracy, or viewing the evidence the state sought to introduce, the court made a finding that the victims were co-conspirators and allowed the statements. The officers then testified as to hearsay statements including the text messages between Donaldson and Pierla and Negron.
>
> The victims' statements were critical to the conviction. The text messages and statements made by Pirela and Negron to law enforcement were the only evidence of compulsion. It was improper to admit this evidence, depriving Donaldson of his right to confront his accusers.[50]

---

[48]  The present petition for federal habeas relief was filed on March 24, 2016. ECF # 1.  As such, it was filed within one year of the conclusion of Donaldson's direct appeal in the Ohio courts and so is timely under 28 U.S.C. § 2254(d)(1).

[49] ECF # 1.

[50] *Id*. at 7-8.

# Analysis

## A.    Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Donaldson is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[51]

2.    There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[52]

3.    In addition, Donaldson states,[53] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[54]

4.    Moreover, subject to the fair presentment arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[55]

5.    Finally, Donaldson is represented by counsel. He requested an evidentiary hearing to develop the factual bases of his claims.[56] However, the evidentiary hearing was requested in his traverse[57] and

---

[51] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[52] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[53] *See*, ECF # 1 at 3.

[54] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[55] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[56] 28 U.S.C. § 2254(e)(2).

[57] ECF # 14 at 24.

not in his original petition. New issues may not be raised in the traverse. "[A] court cannot consider new issues raised in a traverse or reply to the State's answer."[58] Thus, this Court need not address this request.

## B.    Legal Standards

### 1.    *Fair presentment*

The standard of review outlined by 28 U.S.C. § 2254(d) applies by its own terms only to habeas claims "adjudicated on the merits in State court proceedings.[59] When a federal habeas claim was fairly presented to but not adjudicated on the merits by the state courts, the federal habeas court must evaluate that claim under the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact.[60]

The requirement of fair presentment initially involves the issue of exhaustion, since the fair presentment doctrine, like the exhaustion requirement itself, is rooted in important federal-state comity concerns.[61] If the petitioner does not present the same claim on the same theory to the state court as is presented to the federal habeas court, state courts do not have

---

[58] *Burns v. Laffer*, 328 F. Supp.2d 711, 724 (E.D. Mich. 2004), *see Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009).

[59] 28 U.S.C. § 2254(d); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[60] *Maples*, 340 F.3d at 436; *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 803 (N.D. Ohio 2007). In circumstances not applicable here, federal courts employ a modified version of AEDPA deference to the state court decision in cases where the state court did not squarely address the petitioner's claim as a federal Constitutional claim, but its analysis nevertheless bears "some similarity" to the requisite analysis set forth in clearly established federal law. *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006).

[61] *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

a fair opportunity to resolve the matter on the grounds asserted by the petitioner before the federal court review the state court decision under the AEDPA.[62]

In the Sixth Circuit, a petitioner may fairly present his federal claim to the state court in a number of different ways:

(a)     by relying on federal cases employing constitutional analysis;

(b)     by relying on state court cases employing federal constitutional analysis;

(c)     by phrasing the claim in terms of constitutional law or terms sufficiently particular as to allege a denial of a specific constitutional rights;

(d)     by alleging facts well within the mainstream of constitutional law.[63]

But, as the Sixth Circuit has emphasized, fair presentment is not established by showing that the claim presented to the state court was "somewhat similar" to the federal constitutional claim, or that both claims arose out of the same set of facts, or even that a federal claim should have been "self-evident" from the "ramifications" of the state-law claim.[64] "The bottom line is that [there is a lack of fair presentment where] the state courts were not called upon to apply the legal principles governing the constitutional claim now being presented to the federal courts."[65]

---

[62] *Id.*, citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971).

[63] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

[64] *Id.*

[65] *Id.*

Where the petitioner did not present the federal claim but instead a state-law claim, the federal claim is not exhausted. But, when any attempt now to return to state court to exhaust the federal issue would fail as untimely or as barred by *res judicata*, the federal claim is procedurally defaulted.[66]

## 2.    *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[67] Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[68] In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[69]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[70] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate

---

[66] *Id.*; *see*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (failure to timely exhaust a habeas claim in state court constitutes a procedural default).

[67] 28 U.S.C. § 2254(a).

[68] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[69] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[70] *Estelle*, 502 U.S. at 67-68.

the "fundamental fairness" of a trial.[71] Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[72]

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[73] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[74] and may not second-guess a state court's interpretation of its own procedural rules.[75] Further, while in general distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[76] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[77]

### 3. *Actual innocence*

A petitioner who cannot excuse a procedural default by showing cause and prejudice may still obtain federal habeas review of the defaulted claims if he can show through new evidence that his case fits within a narrow class of cases where a constitutional violation has

---

[71] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[72] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[73] *Id.*

[74] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[75] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[76] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

[77] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

probably resulted in a conviction of one who is actually innocent.[78] A petitioner claiming actual innocence must show, in light of new and reliable evidence that was not presented at trial, that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.[79]

Actual innocence means "factual innocence, not mere legal insufficiency."[80] Moreover, the petitioner must show actual innocence as to those counts that were dismissed during plea bargaining.[81]

Finally, a showing of actual innocence is merely a "gateway" that permits review of the petitioner's underlying constitutional claims.[82] The Sixth Circuit does not recognize the existence of a free-standing actual innocence claim.[83]

## C. Application of standards

As his sole ground for federal habeas relief Donaldson claims that the admission of certain pieces of evidence violated the Confrontation Clause. That evidence had been objected to on direct appeal on various different theories: (1) it did not qualify as exceptions

---

[78] *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

[79] *Schlup v. Delo*, 513 U.S. 298, 324-27; *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004).

[80] *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also*, *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006).

[81] *Bousley*, 523 U.S. at 624.

[82] *Schlup*, 513 U.S. at 316.

[83] *D'Ambrosio v. Bagley*, 527 F.3d 489, 498 n.6 (6th Cir. 2008).

to the hearsay rule; (2) it did not meet the requirements of being a prior inconsistent statement; or (3) that the prosecutor engaged in misconduct by refusing to grant immunity to the victims, thus depriving Donaldson of his right to confront them.

The State argues here that none of those theories asserted any element of the current claim to the state court as a federal constitutional issue, and so Donaldson's only ground for federal habeas relief should be dismissed as procedurally defaulted for lack of fair presentment.[84] Moreover, the State asserts that Donaldson's contention that the trial court mis-applied Rule 801(D)(2)(e) of the Ohio Rule of Evidence to admit statements of co-conspirators raises a non-cognizable issue of state law.[85] Finally, the State also argues, on the merits, that the decision of the Ohio appeals court was not contrary to clearly established federal law pertaining to the Confrontation Clause.[86]

In his traverse, Donaldson maintains that the Confrontation Clause issue was fairly presented to both the trial and appeals courts because questions of hearsay and the application of the hearsay rule essentially are challenges to the defendant's right to confront his accusers.[87] In that regard, he also states that because the evidentiary question here also involves the denial of his right to confront his accusers, that question is a cognizable claim.[88]

---

[84] ECF # 11 at 11.

[85] *Id*. at 14.

[86] *Id*. at 16.

[87] ECF # 14 at 8.

[88] *Id*. at 10.

Finally, Donaldson asserts that he is actually innocent, seeking to now expand the record to include two unsworn statements by the victims, in which the victims recant prior statements and/or provide statements exonerating Donaldson.[89]

## 1.    *Fair presentment*

As to the State's fair presentment argument, Donaldson's contention is that any challenge to the application of the hearsay rule and its exclusions necessarily invokes a review of the Confrontation Clause. Thus, even if the dispute arises as a matter of state evidentiary law, it must be considered to have raised a federal constitutional issue to the state court.

As I discussed several years ago in *Mitchell v. Kelly*,[90] a Confrontation Clause violation may be fairly presented to Ohio courts by invoking Ohio decisions which "discuss how the hearsay rules and the Sixth Amendment right to confrontation are implicated in the particular context of permitting ... hearsay statements as to the perpetrator's identity made by a victim who does not testify in court...."[91]  In this case, Donaldson argued to the Ohio courts that statements made by Pirela and Negron to law enforcement - which statements were then admitted at trial - should not have been admitted because a purported victim may not be deemed a co-conspirator for the purpose of admitting those parties's hearsay

---

[89] *Id*. at 18-23.

[90] *Mitchell v. Kelly*, No. 4:09 CV 2845, 2011 WL 2579882 (N.D. Ohio April 1, 2011); *Mitchell*, 2011 WL 2579784 (N.D. Ohio June 29, 2011)( recommendation adopted).

[91] *Mitchell*, 2011 WL 2579882, at *10 (citations omitted).

statements.[92]  In that regard, according to Donaldson's arguments in state court, the issue turned on whether proof of a conspiracy must precede the admission of hearsay statements made by a co-conspirator - proof that Donaldson alleged had never been forthcoming in his case.[93]

Although, the improper admission of hearsay statements may involve a federal constitutional issue arising under the Confrontation Clause, the predicate question of what is necessary to prove the existence of a conspiracy does not necessarily raise any issue beyond a state's definition of what constitutes a conspiracy, and how it may be established.[94] Further, in the more specific context of the present case, although the issue as stated also involves when such proof of a conspiracy must be adduced at trial before the co-conspirator exception to the hearsay rule may be applied, that question has been found by a federal habeas court to be a matter of state law.[95]

Donaldson does not argue that statements of co-conspirators should not be exempted from the normal rules of hearsay, but instead focuses on whether the State here properly

---

[92] ECF # 14 at 5-7 (citing record).

[93] *Id*. at 7-8 (citing record).

[94] See, *Cummings v. Klee,* No. 17-1122, 2017 WL 3401249, at *1 (6th Cir. June 29, 2017); *Lockett v. Arn,* 740 F.2d 407, 411 (6th Cir. 1984); *Riddle v. Petro*, No. 4:03 CV 670, 2006 WL 3337464, at * 8 (N.D. Ohio Nov. 16, 2006)(state appellate court finding that sufficient proof of conspiracy existed at trial to allow hearsay statements of co-conspirator was question of state evidentiary law and did not show abuse of discretion or denial of fair trial).

[95] *Riddl*e, 2006 WL 3337464, at * 8.

proved that Pirela and Negron were co-conspirators with Donaldson so as to qualify for the co-conspirator exemption. As such, and as is shown in the authority cited herein, that question is one concerning the admission of evidence and a matter of state law.

Indeed, the state appellate court here understood the issue before it as simply one concerning the admission of evidence under Ohio Rule of Evidence 801(D)(2)(e) as relates to the co-conspirator exception to the hearsay rule:

> {¶ 13} In his second assignment of error, appellant contends that the court erred by admitting certain evidence. First, appellant points to the admission of state's exhibit No. 32, a recording of the telephone call Detective Swartz made to "Asia." Appellant also alleges that the court erred in admitting copies of text messages between the women. Appellant claims the recording and the transcripts of the text messages amount to inadmissible hearsay. The state maintains that the recording and the transcripts were admissible pursuant to Evid.R. 801(D)(2).

> {¶ 14} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(c). A trial court possesses broad discretion with respect to the admission of evidence, including the discretion to determine whether evidence constitutes hearsay and whether it is admissible hearsay. *State v. Graves,* 9th Dist. Lorain No. 08CA009397, 2009–Ohio–1133, ¶ 4.

> {¶ 15} Under Evid.R. 801(D)(2)(e), certain statements are not "hearsay." The rule states, in pertinent part:

>> A statement is not hearsay if: * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

> {¶ 16} The existence of a conspiracy must be established before a trial court may admit what

-18-

otherwise may constitute inadmissible hearsay statements. *State v. Hand,* 107 Ohio St.3d 378, 2006–Ohio–18, 840 N.E.2d 151, ¶ 100. "[T]he statement of a coconspirator is not admissible pursuant to Evid.R. 801(D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." *State v.. Carter,* 72 Ohio St.3d 545, 550, 651 N.E.2d 965 (1995). To establish independent proof of a conspiracy, the prosecution must provide proof: "(1) of the existence of a conspiracy; (2) of the defendant's participation in the conspiracy; (3) of the declarant's participation in the conspiracy; (4) that the statement was made during the course of the conspiracy; and (5) that the statement was made in furtherance of the conspiracy." (Citation omitted.) *State v. Baker,* 137 Ohio App.3d 628, 653, 739 N.E.2d 819 (12th Dist.2000). A prima facie case is made where the evidence introduced is sufficient to support, but not compel, a particular conclusion, and which only furnishes evidence that the jury may consider and weigh, but need not accept. *State v. Braun,* 8th Dist. Cuyahoga No. 91131, 2009–Ohio–4875, ¶ 107. (Additional citations omitted.).

{¶ 17} Conspiracy has been defined as the planning or aid in planning the commission of the charged offense or agreement that one of more of parties will engage in conduct that facilitates the commission of the charged offense. R.C. 2923.01.

{¶ 18} Before the admission of the disputed evidence, the state had shown evidence that appellant participated in a conspiracy by voluntarily transporting the women to Bowling Green for the sole purpose of engaging in illegal activity. We find this to be a sufficient prima facie case for purposes of Evid. R. 801(D)(2)(e). [96]

---

[96] *Donaldson*, 2014 WL 4160799, at * 3 (citations omitted).

Accordingly, as relates to fair presentment, the matter was not fairly presented to the Ohio courts as a federal constitutional question. Rather, it was presented and understood as a state evidentiary issue, which is a non-cognizable ground for federal habeas relief.

Donaldson, however, raises a second and different argument as well. Specifically, he argues that although the State may have shown that Donaldson and the women were co-conspirators for purposes of promoting prostitution, he was not charged with that offense, but rather with human trafficking.[97] Human trafficking, he maintains, required proof that Donaldson compelled or forced the women into prostitution, not that they conspired together to engage in it.[98] The constitutional error, he now asserts, is that the Ohio courts allowed the co-conspirator exception to apply in a case where the statements were not made in furtherance of the crime for which Donaldson was charged or convicted.[99]

Donaldson was in fact found guilty of two counts of promoting prostitution.[100] Donaldson's brief to the Ohio appeals court makes no mention of any ground for relief arising out of the hearsay exception being found in regards to promoting prostitution but then improperly utilized to support the case for human trafficking. A review of that brief shows that Donaldson argued only that the State had not shown independent evidence of the alleged

---

[97] ECF # 14 at 14.

[98] *Id*.

[99] *Id*.

[100] ECF # 11, Attachment 2 at 23.

conspiracy[101] and that the unavailability of the two women as witnesses was improperly caused by the State's refusal to grant them immunity.[102]  As such, there was no argument of any kind - whether as a federal issue or pursuant to state law - that the co-conspirator exception was misapplied to Donaldson's liability under the human trafficking statute when it should have been limited to use as regards promoting prostitution.

This argument, therefore, was also not fairly presented to the Ohio courts as a federal constitutional claim, and further is not a cognizable basis for federal habeas relief.

## 2.     *Actual innocence*

Donaldson, in his traverse, asserts that he is actually innocent, and further claims that actual innocence is "an independent basis for habeas relief."[103]  To support that claim, Donaldson seeks to expand the record by introducing an unsworn statement from defendant Negron where she recants the statement she gave to police.[104]  This statement, Donaldson maintains, is "new evidence" because Negron did not testify at trial because she invoked her Fifth Amendment rights.[105]  In addition, Donaldson also includes an unsworn statement from

---

[101] *Id.* at 43-45.

[102] *Id*. at 45-46.

[103] ECF # 14 at 18.

[104] *Id*., Attachment 1.

[105] ECF # 14 at 18.

defendant Pirela,[106] which Donaldson states is "more detailed and expansive" than the testimony she gave at trial.[107]

Initially, I observe that, contrary to Donaldson's assertion, actual innocence, based on newly discovered evidence, has never been recognized by the United States Supreme Court as an independent ground for habeas relief. As stated in *Herrera v. Collins*:[108]

> **Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.**[109]

While not foreclosing the possibility that such an independent actual innocence ground might be recognized in the future, the Court went on to note that any potential free-standing claim of actual innocence, stated in its own right and without a predicate constitutional violation, would face an "extraordinarily high" threshold showing.[110]

Here, none of the information in the statements from Negron or Pirella is "new" evidence that was not available at trial. As the district court found in *Lenoir v. Warden*, evidence is not "new" for purposes of actual innocence if the declarant could have testified at trial to the facts related in the proffered statement.[111]

---

[106] ECF # 14, Attachment 2.

[107] ECF # 14 at 19.

[108] *Herrera v. Collins*, 509 U.S. 390 (1993).

[109] *Id.* at 400.

[110] *Id.* at 417.

[111] *Lenoir v. Warden*, 886 F.Supp.2d 718, 729 (S.D. Ohio 2012).

Moreover, the unsworn statements do not meet the requirement of being "reliable."[112] First, unsworn statements are "entitled to little if any weight" in evaluating a claim of actual innocence in a habeas matter.[113] Further, and of some importance here, "[i]t is well-established that recanting affidavits are always viewed with extreme suspicion."[114]

In particular, in this case, as the State noted in its brief to the Ohio appeals court,[115] the evidence at trial establishing a conspiracy between Donaldson and the two women was extensive:

> Following the admission of Exhibit 32, the State presented overwhelming evidence of the existence of a conspiracy among Donaldson, Pirela, and Negron. According to Deputy Crawford, Donaldson's wallet contained a list of female names, phone numbers, a photo of Pirela and Negron, and $1,250 in cash. Vol IV, 43-44. Special Agent Hardie saw a tag on Pirela's purse with the notation of "October 27th, 2012, 'Daddy Meech' bought me a purse and a jacket and Monique a purse too. We love him so." Vol. IV, 150. He also found handwritten notes inside Pirela's and Negron's purses that listed phone numbers, times, numbers of girls, dollar amounts, and time periods. Vol. IV, 154-155. That officers found, at the Ann Arbor Motel, lingerie, a pizza box with handwritten notations of the Days Inn address, $300, and "Half and Hazel, handwritten notes of phone numbers, a piece of writing describing one of the girl's appearance and services, and photographs of the girls with Donaldson provided additional evidence of conspiracy. Vol. IV, 163-167. Special Agent Halibur observed that Pirella's cell phone "phonebook" linked "Meech" with the number 213-215-8370, and Donaldson admitted at the time of booking that 213-215-8370 was his cell phone number. Vol. IV, 100, 67-68. Pirela even identified Donaldson as Meech. Vol. IV,

---

[112] *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[113] *Haynes v. Bergh*, 2014 WL 6871263, at *12 (E.D. Mich. Dec. 5, 2014)(internal quotation and citation omitted).

[114] *Id.* (internal quotation and citation omitted).

[115] ECF # 11, Attachment 2 (state court record) at 77-78.

209.    This evidence, combined with Detective Sergeant Price's expert testimony that pimps generally transport their prostitutes to the destinations, often buy the girls clothes to reward them and keep greater control over them, and often try to recruit girls from a variety of cities, established the existence of a conspiracy by independent proof.[116]

As such, I recommend finding that the unsworn testimony here, which was not subject to cross-examination at trial based on the facts related above, cannot be the kind of new, reliable evidence of actual innocence, not merely legal innocence, as would qualify for overcoming the procedural default in this case.

## Conclusion

For the reasons stated, I recommend that the petition of Kevin Donaldson for a writ of habeas corpus be dismissed.

s/ William H. Baughman, Jr.
United States Magistrate Judge

Dated: September 21, 2017

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[117]

---

[116] *Id.*

[117] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).